## BOARD OF COUNTY COMMISSIONERS OF MOWER COUNTY *vs.* SYLVESTER SMITH.

### August 11, 1875.

**Action by County against Treasurer for Conversion of Public Funds—What may be Recovered.**—The board of county commissioners may sue the county treasurer, either on the bond or independent of it, for the conversion of funds belonging in the county treasury, and in such suit may recover for all the funds converted—state, county, town, school and other funds.

**Same—Defendant not Entitled to Bill of Particulars.**—In such a suit for conversion the defendant is not entitled to demand a bill of particulars. If the allegations in the complaint are not sufficiently specific, his remedy is by motion to have it made more definite and certain.

**Same—Complaint Need not Specify Errors in Treasurer's Accounts.**—It is not necessary, in such suit, that the complaint should allege that there was an accounting and settlement by the treasurer, nor to state wherein the accounts of the treasurer are incorrect.  If there has been such accounting or settlement as the law requires, it is matter of defence, and, if relied on as a defence, it may be impeached for fraud or mistake.

**Same—Statute of Limitations.**—Where there has been a fraudulent conversion, the time limited for the commencement of an action is to be counted from the discovery of the fraud.

**Evidence—Unauthenticated Signature Held not Admissible.**—Memoranda of the receipt of taxes, made in the margin of the assessment books, with the name

v.22m—7

of the defendant signed to them, are not admissible to charge him with such taxes unless in some way authenticated as his entries. They are not "written instruments" within the meaning of Laws 1867, ch. 64.

Practice—Motions in Adjoining District.—Where the judge of the district in which an action is pending is disqualified to act in the cause, a motion in it may be made before the judge of an adjoining district, without regard to the distance from the residence of the judge of the district in which the action is pending.

This was an action against the defendant, formerly treasurer of Mower county, to recover moneys alleged to have been received by him as such treasurer, and fraudulently converted by him during his four successive terms of office, covering the period from March 1, 1862, to March 13, 1869, when he resigned before the expiration of his last term. The alleged defalcation in each term is stated as a separate cause of action, and a fifth cause of action is added, in which he is charged with the receipt and conversion, during his several terms of office, of the sum of $41,000.00, being the aggregate of the defalcations alleged in the statements of the four first causes of action. For a sixth cause of action it is alleged that during his several terms of office the defendant rendered to the commissioners and auditor of the county false statements and accounts of the moneys received and paid out by him as such treasurer; and that the amount of his receipts over and above the payments was greater, by the sum of $41,000.00, than the amount reported by him in his said statements and accounts; and it is further alleged that the fraud and conversion so committed by defendant were not discovered by plaintiff until one year previous to the commencement of this action, which was brought in the district court for Mower county in September, 1871.

In the statement of each of the five first causes of action the defendant is alleged to have received " of state funds, school funds, interest, fines, redemptions, licenses, general and special taxes, and various other sources as provided by law," the sum he is therein charged with converting. In each of the four first causes of action it is alleged, though with

some slight variations in phraseology, that the defendant " was the lawful recipient and custodian of the moneys so received until duly transferred to the proper authorities, or officers authorized by law to receive the same, or to his successor in office," and that he " did wilfully and wrongfully neglect and refuse to account for and pay over any part thereof to the proper authorities and officers authorized to receive the same, and did convert the same to his own use." In the statement of the first cause of action the money is alleged to have been "part of the funds and property of said county and state, and money belonging in the treasury thereof," and defendant is charged with failure "to account for and pay over and return said money to said county and state." In the statement of the second cause of action the money is alleged to have been " part of the funds belonging to said county and state," and defendant is charged with failure "to pay and disburse the same, or any part thereof, to the officers and authorities of towns and school districts in said county, and to said county and state, such portions of said money, or any part thereof, which they or each of them were entitled by law to receive." In the statement of the third cause of action the money is alleged to have been " a part of the funds belonging to the various towns and school districts of said county, and to said state;" and it is charged that the defendant, " at the expiration of his said term of office, and at the time fixed by law for treasurers to make settlement with said state, town, county and school districts,. and pay over the money to them belonging, did wilfully and wrongfully neglect to account for and transfer to the proper authorities and officers authorized to receive the same such moneys and the whole thereof, and did fail and neglect to pay said county of Mower the portions of such moneys belonging to the special funds raised therein by levy of special tax, and did fail to pay over to the state such portions of such money as to it belonged." In the statement of the fourth cause of action

the money is alleged to have been "a part of the funds belonging to the several towns and school districts in said county, and to said state," and the defendant is charged with failure "to pay to said county of Mower, to said state, and to the several towns and school districts in said county, the funds and the portions of said money to each belonging." In the statement of the fifth cause of action the $41,000.00, which defendant is charged with converting during his four terms of office, is stated to have "belonged to the several funds of the treasury of the said county of Mower, to towns, school districts, county, and to said state funds;" and it is charged that the defendant, "at the expiration of his said term of office, and at the various times provided by law for county treasurers to make settlement with, and pay over to, towns, school districts, county and state the various sums of money to them and each of them belonging, did wilfully and corruptly neglect and refuse to pay over and transfer to his successors, and to the several towns and precincts aforesaid, and the said county and state, the money in his custody, and to them and each of them belonging, and did wilfully, corruptly and without authority convert and appropriate said money to his own use."

The defendant included in his notice of appearance a demand of "a copy of the account or bill of particulars of the demand upon which this action is founded," which was not complied with.

The answer contains a general denial of all the allegations in the complaint, (except the allegation that defendant was county treasurer,) a denial of the conversions charged, a plea of the statute of limitations to the two first causes of action, and an averment that defendant, during all the time he was treasurer, and at the times required by law, duly and fully accounted to and with the plaintiff for all moneys by him received as such treasurer, and settled with the plaintiff therefor, and duly and fully paid over to the proper authorities and persons, as required by law, all

such moneys by him received. The answer further alleges " that during all the time, and each and every time, that he held said office, embracing all the period covered by the complaint, he did, at each of the times prescribed by law for the county treasurer to make settlements with the auditor or county commissioners, make settlements with said authorities of all his business, accounts and transactions as county treasurer, and render to them, at each of said times, a stated account in writing of all said transactions, which was examined by said auditor and county commissioners, and approved and adopted and accepted by them, and said accounts respectively settled and adjusted by and between said authorities and this defendant as such treasurer, and all balances found to be due from him as such treasurer, upon said accounting and settlement, were then and there duly and fully paid by this defendant, as required by law."

By consent of parties the action was referred to three referees, who were engaged for several months in the hearing and determination of it, a great amount of testimony being taken. At the beginning of the trial the defendant moved for a dismissal on the ground that the action could not be brought by the plaintiff, but only by the auditor of the county, and for the failure of plaintiff to serve a bill of particulars in compliance with defendant's demand. He also, on this last ground, objected to the admission of any evidence. The motion and the objection were overruled, and exceptions duly noted.

The plaintiff, to prove the collection of taxes by the defendant, offered in evidence the collector's books, or grand duplicates, for the several towns in the county, with the word "paid," and the name of the defendant, written in the margin of each book, opposite items of taxes. The defendant objected to the evidence, " 1, on the ground that no evidence is admissible under the pleadings that seeks to go behind, or overturn, the annual settlements and stated accounts made by plaintiff and defendant; 2, that no bill of particulars

has been furnished; and, 3, that there is no evidence that the name of the defendant, with the word "paid" so written in the margin, opposite items of taxes, is the signature of defendant. The objection was overruled, and the defendant excepted.

At the close of plaintiff's case the defendant moved for a dismissal for want of evidence to warrant a finding for plaintiff, and because "there is proof, uncontradicted, that all accounts were stated between the parties each year while defendant was in office, and it cannot be impeached in this action." The motion was denied, and defendant excepted.

The defendant then offered evidence tending to prove that, in very many instances, his name, with the word "paid," in the margin of the grand duplicates, was not his signature, nor written with his authority, and tending to prove annual statements and settlements of his accounts as treasurer between himself and the county commissioners, and a like statement and settlement when he retired from office. The plaintiff, in rebuttal, offered evidence to disprove the evidence introduced by defendant to show the forgeries of his name in the grand duplicates. Thereupon, the plaintiff having rested, the defendant again moved for a dismissal "on the ground that the defence has clearly proved a stated and settled account, and that the evidence is not contradicted, and the same cannot be surcharged, falsified, or opened, under this complaint, or in this form of action." The motion was denied, and defendant excepted.

The referees found, among other things, that during his entire term of office the defendant, as treasurer, collected and converted to his own use $17,144.97, "but at what particular times, and out of what particular fund or funds, the referees are unable to determine from the evidence, and the evidence does not disclose." They also found that during the time the defendant was treasurer "there was no settlement and balancing of accounts, such as are required by law, between the defendant and the county commission-

ers, or the defendant and county auditor of said county," and ordered judgment for plaintiff for the amount so found to have been converted, with interest.

A motion for a new trial, made before *Waite*, J., of the sixth district, (the judge of the tenth district having been an attorney in the action,) was denied, and the defendant appealed.

*Gordon E. Cole, R. A. Jones*, and *D. B. Johnson, jr.*, for appellant.

Under Gen. St. ch. 66, § 26, every action must be brought in the name of the real party in interest, except when the plaintiff is an executor or administrator, a trustee of an express trust, or a person expressly authorized by' statute to sue.

The plaintiff is not the real party in interest. The complaint itself shows that the money alleged to have been converted did not all belong to the county, and there is nothing in the facts or findings to show that the county is "the real party in interest" as to a single dollar of it.

The county is interested in but a small part of the moneys in the hands of the treasurer, and is not responsible to the state, towns, school districts, etc., for the taxes due them. As to these, the county officers act as agents of the state, towns, etc., and not as agents of the county. Nor is the county the trustee of an express trust, as that term is used in the statute. If any one is such trustee it is the state, in whose name the treasurer's bond may be prosecuted for the benefit of all parties interested.

The statute has provided a remedy in a case like this by suit on the treasurer's bond, and it must be followed. Gen. St. ch. 8, §§ 126, 136; ch. 78, §§ 1–3; *Lorillard* v. *Town of Monroe*, 11 N. Y. 392; *People* v. *Supervisors Chenango Co.*, 11 N. Y. 563; *Town of Fishkill* v. *Plank Road Co.*, 22 Barb. 634; *Town of Galen* v. *Plank Road Co.*, 27 Barb. 523.

The county is not authorized by statute to bring this action. Counties have no common law right to sue and be

sued. They can only sue when and in the manner authorized by statute. *Schuyler Co.* v. *Mercer Co.*, 4 Gilm. 20 ; *County of Rock Island* v. *Steele*, 31 Ill. 543.

The treasurer's bond runs to the state, and any person or body politic entitled to the benefit of the security, or injured by his misconduct, may sue on the bond to recover the amount to which he is entitled ; but, to prevent the treasurer being overwhelmed by a multitude of suits, any plaintiff other than the state must first obtain leave of the district court, (which was not done in this case,) the state, as trustee, being the proper party plaintiff, and suits by others being exceptional, and their right to sue depending on the sound discretion of the court.

If a county treasurer fails to account for or pay over all moneys with which he stands charged, the county auditor, on receiving instructions for that purpose from the state auditor or the county commissioners, shall cause an action to be brought against the treasurer and his sureties. Gen. St. ch 8, § 136. Specific remedies are also provided in Gen. St. ch. 8, §§ 135, 143, 144 ; ch. 11, § 103.

"The commissioners shall exercise no other powers than those given by law and shall have the management of the county funds and business, except in cases otherwise provided for." Gen. St. ch. 8, § 104. The case of a defaulting treasurer is " otherwise provided for." The only power conferred on counties as to suits is the general corporate power " to sue and be sued," (Gen. St. ch. 8, § 75,) leaving the mode in which, and the cases when, to be otherwise provided for. When a county sues in the exercise of its general powers, it must sue in the name of its board of commissioners, " but this provision shall not prevent other county officers, when authorized by law, from suing in their name of office for the benefit of the county," (Gen. St. ch. 8, § 80,) thus excluding the cases where the county auditor is required to cause suit to be brought against the treasurer and his sureties. There being no power conferred on the

commissioners to bring suit, or have the management of the county funds, in cases otherwise provided for by law, this action cannot be sustained. *Hunter* v. *Comm'rs Mercer Co.*, 10 Ohio St. 515 ; *State* ex rel. *Comm'rs Ripley Co.* v. *Robinson*, 2 Ind. 40 ; *Snyder* v. *State*, 21 Ind. 77.

Where a right springs from a statute which also prescribes the remedy, that remedy is exclusive. *Shepard* v. *Comm'rs Darke Co.*, 8 Ohio St. 354 ; *City of Faribault* v. *Misener*, 20 Minn. 396. Taxes and assessments are purely creatures of statute, and the statutes already cited furnish the only remedy for a diversion of them by a collector from the county treasury.

2. If plaintiff can recover at all, it can only be for county funds. The judgment in this action could not be pleaded in bar to a suit on the treasurer's bond, brought by the state, or by any town or school district, for there is no privity between them and the plaintiff, nor is plaintiff trustee of an express trust for their benefit, nor authorized by statute to bring this suit on their behalf. But in the absence of legislation, or some peculiar reason giving duplicate actions, a right of action for the same thing cannot exist at the same time in two independent corporations or individuals. *People* v. *Ingersoll*, 58 N. Y. 1, 20. An action on the bond against the treasurer and his sureties cannot exist in one, and against the treasurer alone, in a common law action in another, to recover for the same defalcation. If judgment is rendered in this action for $17,000.00 in gross, it cannot be ascertained from the pleadings or the judgment how much of the money converted was county funds, and how much belonged to the several towns and school districts.

The county treasurer is a public officer, elected pursuant to general laws, performing various services for different bodies politic. The county, as such, is not responsible for his acts, except so far as he acts as its agent. The county is not the custodian of any funds collected by him, except those belonging to the county itself, and the county is not responsible to the state or school districts for money in his hands

belonging to them. *Lorillard* v. *Town of Monroe*, 11 N. Y. 392; *People* v. *Supervisors Chenango Co.*, 11 N. Y. 563; *Town of Fishkill* v. *Plank Road Co.*, 22 Barb. 634; *Town of Galen* v. *Plank Road Co.*, 27 Barb. 523; *Sherbourne* v. *Yuba Co.*, 21 Cal. 113; *Huffman* v. *San Joaquin Co.*, 21 Cal. 426. The later decisions in New York, while holding that taxes illegally levied, collected and paid into the treasury of a town or county, and used by it, may be recovered back, put this not on the ground that the county or town was responsible for the acts of revenue officers, holding office under general laws, but on the ground that the funds sued for had gone into the treasury of the town or county, and been used by it. *Lorillard* v. *Town of Monroe*, 11 N. Y. 392; *Newman* v. *Supervisors Livingston Co.*, 45 N. Y. 676; *Bank of Commonwealth* v. *Mayor*, 43 N. Y. 184. But if the county can recover, in this action, for more than its own funds, it must be because the treasurer acted as its agent, and it is, therefore, responsible to other bodies politic for moneys collected and converted by him. The case of *State* v. *Montgomery Co.*, 26 Ind. 522, is not in point, for in Indiana the county is by statute made responsible to the state for default of the treasurer to pay over state moneys. In *Sacramento Co.* v. *Bird*, 31 Cal. 46, the action was sustained on the ground that it was brought for county funds only.

3. The defendant was clearly entitled to a bill of particulars, the action being upon a long and complicated account, and an attempt to overturn an account stated, with nothing in the pleadings to advise defendant of the nature of the alleged deficit. *Brewster* v. *Sackett*, 1 Cow. 571, and note. If a pleader, claiming on an account stated, is required to furnish a bill of particulars under the statute, *a fortiori* should it be required of one who seeks to overturn and go behind such an account, without surcharging it, or affording by his pleadings any information or notice of the deficit. Gen. St. ch. 66, § 88; *Goings* v. *Patten*, 17 Abb. Pr. 339.

4. The uncontradicted proof shows that the defendant

rendered to the commissioners and the auditor statements in exact compliance with the statute. The complaint itself affirmatively alleges that he made such statements, and charges only that they were untrue. The complaint, therefore, if treated as a bill in equity seeking to surcharge the accounts, is fatally defective in not setting out the particular matters in which such statements are alleged to be untrue. If the complaint proceeds on the theory of ignoring the account stated, then, upon the proof made of the stated and settled account expressly pleaded in the answer, the action should have been dismissed. Certainly no evidence seeking to go behind the account was competent until plaintiff amended the complaint by setting out the specific items of deficit claimed. 1 Dan. Ch. Pr. 371; *Warner* v. *Myrick*, 16 Minn. 91; *Weed* v. *Smull*, 7 Paige, 573; *Hutchinson* v. *Market Bank*, 48 Barb. 302; *Chappedelaine* v. *De Chenaux*, 4 Cranch, 306; *Bruen* v. *Hone*, 2 Barb. 586; *Stoughton* v. *Lynch*, 2 John. Ch. 209; *Lockwood* v. *Thorne*, 11 N. Y. 170; *Bullock* v. *Boyd*, 2 Edw. Ch. 293; *Philips* v. *Belden*, 2 Edw. Ch. 1; *Supervisors Iowa Co.* v. *Vivian*, 31 Wis. 217; *Stearns* v. *Page*, 7 How. 819. The plea, being of a settled as well as stated account, need not show the balance. Sto. Eq. Pl. § 798. In *Lockwood* v. *Thorne*, 18 N. Y. 285, an action to recover a single item alleged to have been allowed by mistake, it is merely held that a stated and settled account is not an absolute estoppel, and the court expressly approve the doctrine for which we contend.

The objection of the statute of limitations was met by the claim that this was an equitable action for relief on the ground of fraud, and that the action was brought within six years after discovery of the fraud, and the referees so held. This holding can only be sustained on the ground that this is an equitable action to set aside the stated accounts for fraud, and not a common law action to recover an alleged deficit. If this be true, then the plaintiff, having alleged a stated account which he seeks to set aside for fraud, must

first allege and then prove the particulars of the deficit; otherwise the stated account is conclusive. If this was not the form of action, then it was a common law action to recover a deficit, ignoring any stated account, and it would be for defendant to prove the account were it not admitted in the complaint; but in such action the plaintiff would be barred by the statute of limitations. Both rulings cannot stand. *Cock* v. *Van Etten*, 12 Minn. 522.

5. It was error to hold defendant responsible for the items in the duplicates against which his name was written, without proof of his signature.

*Batchelder & Buckham.* and *E. O. Wheeler*, for respondent.

GILFILLAN, C. J. This is an action against the defendant, ex-treasurer of the county of Mower, for failing to account for and pay over, and for converting, moneys belonging in the treasury of the county. In the complaint are five causes of action, or counts, the first four relating to as many different terms of office of defendant, and the fifth covering all of them. The aggregate amount claimed in the complaint is $41,000.00, alleged to have belonged to the various funds in the treasury—state, county, town and school funds—the amount belonging to each not being stated. The referees find by their report that, during his terms of office, the defendant appropriated, and converted to his own use, $17,144.97 from the county treasury; but at what particular times, or from what particular fund or funds, they say they are unable to determine.

The defendant makes, and argues with great ability, the objection that the board of county commissioners is not the proper party plaintiff in a suit of this kind, and this we deem the most important question in the case.

The statute (Gen. St. ch. 8, § 75;) makes each organized county a body politic and corporate, with capacity to sue and be sued, without any specification of the cases in which it may sue and be sued, and by § 80 the name by

which it is to sue or be sued is "The Board of County Commissioners" of the county. The case is different from that of *Hunter* v. *Comm'rs of Mercer County*, 10 Ohio St. 515, for in that state counties are not bodies corporate, and general authority to sue and be sued is not conferred on them by statute; but the statute of that state expressly specifies the cases in which the boards of county commissioners may sue or be sued. In this state the county may sue or be sued in any matter pertaining to the business or interests of the county, with no limitation other than would apply to any corporation. That the county commissioners may sue a defaulting treasurer, without reference to his official bond, is held in *Comm'rs of McLeod County* v. *Gilbert*, 19 Minn. 214.

The principal argument used to show that the county is not the proper plaintiff is, that the moneys abstracted from the county treasury belong, not to the county, but to the state, towns and school districts, and that, therefore, the county is not the real party in interest; and that, because the statute prescribes that the treasurer's bond shall run, not to the county, but to the state, the latter and not the former is the trustee of the various funds in the treasury; and that if suit is to be brought by any but the real parties in interest—that is, the various corporations or *quasi* corporations' to whom the various funds belong—then it must be brought by, or in the name of, the state, as the trustee of an express trust.

This suit is not upon the bond, but upon the defendant's liability, independent of it. This liability does not arise upon the bond, nor are the rights of the county as against the defendant created by it. It is required, not for the purpose of defining the rights and liabilities of the parties, but as security to rights and obligations that would exist if no bond were given. But the provisions of statute in regard to such bonds, and the enforcement of them, are material and controlling, as showing the relations of the state, county,

towns, school districts, etc., to the moneys intended to be secured by them ; and we think that whoever would be a proper plaintiff in a suit upon such a bond would be a proper plaintiff in a suit not on the bond to enforce the liability which the bond is given to secure.

By Gen. St. ch. 8, § 126, the bonds of county treasurers are "payable to the state of Minnesota, and conditioned for the safe-keeping and paying over, according to law, of all moneys which come into his hands for state, county, township, school, road, bridge, poor, town, and all other purposes."

Section 1, ch. 78, Gen. St., provides that "the official bond, or other security, of a public officer to the state, or any municipal body or corporation, whether with or without sureties, is to be construed as security to all persons, severally, for the official delinquencies against which it is intended to provide, as well as to the state, body or corporation designated therein; *provided*, that when no other provision is made by law, it shall run to the state of Minnesota." Section 2. "When a public officer, by official misconduct or neglect, forfeits his official bond, or renders his sureties liable upon an official security, any person injured thereby, or who is by law entitled to the benefit of the security, may bring an action thereon in his own name," etc.

This statute makes the decisions cited from *State* v. *Robinson*, 2 Ind. 40, and *Snyder* v. *State*, 21 Ind. 77, inapplicable, because in that state, so far as we can discover from those cases, there is no provision of statute like the one we have just quoted, and suits on official bonds, which are required to run to the state as obligee, must be brought in the name of the state, being governed wholly by the rules of the common law. According to the provisions of these statutes the state, in the greater number of official bonds, is only a nominal, and not the actual, obligee. This, however, shows no more than that the state need not, simply

by reason of its being named as obligee in the bond, be the plaintiff in a suit on it. Any person entitled to its security may sue upon it after obtaining leave of the court.

It is not necessary to determine whether the state, or any city, town or school district, may, by reason of its interest, and not by reason of the statute directing suit to be brought, sue, either on the bond or independently of it, for the portion of the abstracted moneys to which it is entitled. The question is, does the statute intend that the county may sue to enforce a restoration to its treasury of all moneys unlawfully taken or withheld from it? It does not follow that because one may sue, the other cannot. The right of the general owner of property, and of one having a special property in it, to sue for a conversion of it, is an instance of a right at common law in two different persons to sue for the same thing.

Nor does the right of the county to sue depend on its being strictly the trustee of an express trust within the meaning of Gen. St. ch. 66, § 28. The county is expressly authorized by statute to bring suit, and if the recovery to its treasury of moneys belonging in it comes within the legitimate business of the county, it is a person expressly authorized to sue, mentioned in § 28. That the care over the county treasury, and all the moneys in it, is intended by statute to be part of the business of the county organization, is evident from the different provisions made in regard to it. All taxes, when collected, belong in the county treasury. The treasurer is required by Gen. St. ch. 11, § 86, to "place the same, when collected, to the credit of the county." They are to remain in the treasury until drawn out according to law. The accounts of the treasurer are rendered to the county commissioners and county auditor if the commissioners are in session; if they are not in session, then to the auditor alone. All the treasurer's books, accounts and vouchers, and all moneys in the treasury, are to be at all times subject to the inspection and

examination of the commissioners, or any committee thereof. Gen. St. ch. 8, § 132. The settlements are to be made with the county auditor or county commissioners. Gen. St. ch. 8, §§ 103, 133, 134; ch. 11, § 102. They may require the treasurer to give a new bond, and if he fail to do so, his office is declared vacant. Gen. St. ch. 8, §§ 141, 142. When an action is commenced against him they may remove him. Gen. St. ch. 8, § 137. They may order suit to be commenced on his bond, (Gen. St. ch. 8, § 136,) and in such suit judgment may be rendered against him and his sureties, not for the amount due the county fund alone, but for the whole amount due from the treasurer. When the money is collected in such suit, it is to be paid into the treasury of the county to which it is due. Gen. St. ch. 8, § 138.

It is provided that the state shall, except where otherwise expressly provided, be the obligee in all official bonds; but that it was thereby intended to make the state the trustee of an express trust in all such cases, so as to be the only proper party plaintiff in a suit on such bond, is negatived by the provisions that the bond shall be construed as security to all persons severally for the official delinquencies against which it is intended to provide, as well as to the state, etc., and that any person entitled to the security may bring an action thereon in his own name, etc. Such bonds are required to run to the state only as a matter of convenience, to establish a uniform rule and prevent doubts or mistakes.

That the state auditor may instruct the county auditor to cause an action to be commenced on the bond does not show that the action must be in the name of the state, but rather tends to show the reverse; for if it was intended by the statute that the action can only be brought by the state and in its name, we would naturally expect that the state auditor should cause, or should direct the attorney general or some other state officer to cause, it to be commenced,

and that the control over, and prosecution of, it should be entrusted to some officer of the state. The purpose of this provision was, undoubtedly, to prevent the prosecution of such bonds being in the uncontrolled discretion of the board of county commissioners.

If it had been intended that the state, as trustee of an express trust, must sue for all the funds, provision would have been made for payment of the moneys collected on the judgment into the state treasury, and for distribution of it, by the *trustee*, among the *cestuis que trust;* and had it been intended that each corporation, or *quasi* corporation, interested in the funds must sue for the portion to which it is entitled, provision would surely have been made for the commencement of the action by some officer of such corporation, or *quasi* corporation, and for the payment to it of the money when collected by means of the action. Instead of this the legislature has provided for an action to be commenced by county officers to recover moneys belonging in the county treasury, and for the restoration to that treasury of such moneys when collected. The only connection which any but county officers can, under the statute, have with such action is that the state auditor may instruct the county auditor to cause it to be commenced.

The great multiplicity of suits that would have been made necessary by it, and the difficulty, in many instances, of proving what portion of any sum abstracted from the treasury each plaintiff would be entitled to, make it highly improbable that the legislature intended it as a general rule that the state, county, cities, towns and school districts must necessarily sue, each for its own portion of the funds, for such delinquency by county treasurers. We have no doubt that it was intended that the county may sue in such cases, and recover the whole amount of the delinquency, unless, perhaps, where the state, or some of the corporations, or *quasi* corporations, has recovered for its portion.

v.22m—8

The only case to which we have been referred which really covers the point is *Supervisors of Albany Co.* v. *Durant*, 9 Paige, 182. That was a suit, in the nature of a creditor's bill, to enforce the payment of taxes. It was held that although the taxes, when collected, were to be paid in to the county treasurer, the supervisors were the proper parties to enforce the payment. Certainly, if the supervisors or county commissioners may bring suit to collect the taxes, and bring them into the treasury, they can sue and compel a return of the money upon an unlawful abstraction of it.

Within the proper time after the service of the complaint the defendant demanded a bill of particulars, which demand was not complied with; and at the commencement of the trial the defendant moved to dismiss the action on that ground, and also objected to the admission of any evidence on the same ground. The motion was denied, and the objection overruled.

The action is not one in which the defendant is entitled, of right, to a bill of particulars. It is an action for conversion of moneys, and not on an account alleged, and if the complaint does not set forth sufficient particulars of the moneys alleged to have been converted to enable defendant adequately to defend himself, his remedy is by motion to make it more definite and certain. *Blackie* v. *Neilson*, 6 Bosw. 681.

On the trial the defendant moved to dismiss, and also objected to any evidence being given, because, as claimed by the defendant, the action is substantially one to impeach the accounts or settlements of the treasurer, and the complaint does not state the particulars in which it is claimed that the accounts or settlements are incorrect. The action, as we have stated, is for conversion of moneys, and the complaint does not allege any accounting or settlement, such as the law requires of the treasurer. If there was any, it was matter of fact to be pleaded; and, because it

did not appear from the complaint, it was for the defendant, if he relied upon it, to set it up in the answer, which he has done. Such a defence requires no reply, and, upon proof of the defence being offered at the trial, the plaintiff might controvert it, or avoid it, by proof impeaching the account or settlement for fraud or mistake. It could not avail as a defence at law if founded in fraud or mistake. An account stated or settled ' is a mere admission that the account is correct. It is not an estoppel. The account is still open to impeachment for mistakes or errors. *Lockwood* v. *Thorne*, 18 N. Y. 285, 292.

If the defendant, occupying, as he did, a fiduciary relation to the county, converted the moneys, it was a fraud within the rule in *Cock* v. *Van Etten*, 12 Minn. 522, and the time limited for the commencement of the action began to run upon the discovery by plaintiff of the fraud, or notice to it of such facts and circumstances as, if investigated, would lead to such discovery.

To charge the defendant with moneys received, the plaintiffs offered a great number of what were called "grand duplicates," but which appear to have been the assessment or tax books of towns, opposite many of the items of tax in which was written, in the margin, the word "paid" and the name of defendant. These marginal entries were objected to because there was no evidence that the name of defendant, written in connection, with the word "paid" opposite the various items, was his signature. The entries were received in evidence.

There is no law requiring such entries to be made, and, therefore, they do not stand as official records. There was no proof that the entries were in the books when in custody of defendant, and so there could be no presumption of their genuineness from the fact that they came from his posses-ssion. Such memoranda are not "written instruments" within the meaning of Laws 1867, ch. 64. The written instruments meant by that statute are formal instruments

or agreements, and do not include mere entries made only for the use or convenience of the party making them. It was error to admit these entries without proof of their authenticity. We have carefully examined the case to ascertain if there is any evidence curing this error, and find none, and for this reason a new trial must be had.

Judge Page was judge of the district (the tenth) in which the action was pending, and resided at Austin, the county seat of the county in which the action was pending. The motion for a new trial was noticed for hearing at Mankato, before Judge Waite, of the sixth (an adjoining) district. The respondent makes the objection that the latter has no jurisdiction to hear the motion.

Section 4, ch. 67, Laws 1867, provides that "motions must be made in the district in which the action is pending, or in an adjoining district, provided that no motion shall be made in an adjoining district, which shall require the hearing of such a motion, at a greater distance from the county seat where the action is pending in which the motion is made than the residence of the judge of the district wherein such action is pending from such county seat." The act of 1867 does not in terms repeal Gen. St. ch. 64, § 5. That section provides that " whenever a district judge is a party, or otherwise interested, in any cause, another district judge, in an adjoining district, shall, within his district, transact. any *ex parte* business, hear and determine motions," etc.

Except under this provision the parties, in a cause where the judge of the district in which it is pending is disqualified to act, can make no applications •in vacation. We cannot hold, by implication, that the act of 1867 was intended to take away their right to make such applications, and think the right given in ch. 64, § 5, is preserved. Judge Page was disqualified by reason of having been attorney in the cause.

Many other questions of little importance are made by the defendant; but as a new trial must be had for the

reason stated, upon which trial those questions are not very likely to arise, we pass them over.

Order reversed.