VILLA J. LEWIS and others *vs.* THOMAS WELCH.

April 21, 1891.

On reargument, August 29, 1891.

**Administrator — Waiver of Rights as Pledgee of Property of Intestate.**—The defendant was administrator of the estate of an intestate. He held a note and mortgage, which had belonged to the intestate, and which the latter had pledged to the defendant as collateral security for a debt owing to him. As administrator he treated the note and mortgage as belonging to the estate, without asserting his right to hold the same for his personal benefit, and proceeded to foreclose the mortgage (by advertisement) in behalf of the estate. *Held,* that he effectually waived his personal rights as a pledgee.

**Estates of Decedents—Effect of Allowance of Claim.**—After an allowance by the probate court of a claim against an estate, the validity of the claim is not to be questioned collaterally.

v.47 M.—13

Same—Foreclosure of Mortgage held as Assets of Estate—Disability of Administrator to Purchase for his Own Benefit.—An administrator, holding a note and mortgage as assets of the estate, is not permitted, at a sale under a foreclosure instituted by him, to purchase the mortgaged premises in his own behalf, and to hold for his own benefit a title thus acquired as against the claim of the *cestuis que trustent*, seasonably asserted, that the purchase should be treated as being for their benefit. The general rule disqualifying one standing in a fiduciary relation to thus purchase at a sale instituted or controlled by himself is applicable in such case, even though as a purchaser he pays the full amount of the mortgage debt.

Same — Action by Heirs to Charge Administrator as Trustee — Laches.—The neglect of *cestuis que trustent* for many years to sue to thus charge a trustee *held* not to constitute laches, the trustee having concealed the fact that he was the real purchaser by bidding off the property in the name of another person, who afterwards conveyed to him, and the *cestuis que trustent* having no notice that the administrator was the real purchaser.

Same—Statute of Limitation.—*Held, also,* that the statutory limitation of six years only commenced to run from the discovery of the fact which the law treats as a fraud.

## On Reargument.

Same—Conditions of Relief where Administrator was also a Creditor.—At the sale under a foreclosure, by an administrator, of a mortgage held by him as belonging to the estate, the administrator, being a creditor of the estate, purchased the mortgaged premises in his own behalf at a price less than the amount of his debt, in effect (in the manner stated in the opinion) applying so much of his allowed claim against the estate in making such purchase. *Held,* that the heirs of the intestate, asserting their right to charge the administrator as a trustee for them of the title acquired by such purchase, should not be required to pay to him the full amount of his debt against the estate, but only so much of it as he had applied in making the purchase.

Appeal by defendant from a judgment of the district court for Ramsey county, where the action (brought in September, 1889,) was tried by *Otis,* J.

*Warner, Richardson & Lawrence,* for appellant.

*Francis G. Burke,* for respondents.

.DICKINSON, J.[1] This is an appeal by the defendant from a judgment. The plaintiffs are the heirs-at-law of one Bond. The defendant, as administrator of his estate, foreclosed a mortgage, and through that foreclosure, he being the real purchaser at the foreclosure sale, acquired the title to the mortgaged property. By the judgment in this action, from which the defendant has appealed, it was declared that the defendant held the title thus acquired in trust for the benefit of the plaintiffs. The facts, as established by the findings of the court, must be somewhat more fully stated. Bond during his lifetime became indebted to the defendant to the amount of $2,000; and in the spring of 1864, as security for such indebtedness, he delivered to the defendant, without making any formal written assignment, the promissory note of one Brown, made in favor of Bond in January, 1859, for the sum of $1,000, payable one year after date, and a mortgage upon the land in controversy, executed by Brown to Bond, to secure the payment of the note. Bond died intestate in the state of Ohio in 1866. In February, 1872, the defendant was appointed administrator of the estate by the probate court of Ramsey county, on petition therefor representing that the defendant was a creditor of the estate. As such administrator he proceeded to foreclose the mortgage by advertisement under a power of sale contained in the mortgage, thus treating it as belonging to the estate, and thereby waiving his equitable claim upon the note and mortgage. The foreclosure sale was made in May, 1872, the defendant purchasing the property, and taking the sheriff's certificate of sale, describing the purchaser as "Thos. Welch, administrator of estate of A. F. Bond, deceased." He paid no money for such sale, but assumed in this manner to satisfy the debt to himself. Except as to one of the several lots in controversy, this foreclosure was defective in that the land was erroneously described in the published notice and in the sheriff's certificate. In view of the subsequent proceedings this first foreclosure is not of very great importance. In December, 1872, at the time fixed by the probate court for receiving proofs of the claims of creditors against the estate, the defendant made proof of the before-

[1] Vanderburgh, J., took no part in this decision.

mentioned indebtedness of $2,000, and the same was allowed by the court as a valid claim of the defendant against the estate. No other debt against the estate was proved. In August, 1873, the defendant discovered the defect in the foreclosure, and he then proceeded again, as administrator, to reforeclose the mortgage by advertisement, the sale being made in September, 1873. The defendant bid in the property for the aggregate sum of $2,634 in the name of one Kelly as purchaser, but intending the purchase to be for his own personal benefit, Kelly's name being used with a view of carrying such intention into effect. The sheriff's certificate of sale ran to Kelly. No money was paid on such sale, but the defendant charged himself, in his final account as administrator, with the amount for which the property was bid off, $2,634, as so much money received by him on the sale, and credited himself with the expenses of the foreclosure and of administration, $233.78. No redemption was ever made. The premises were then of the value of $4,000. The amount so bid was in excess of the amount really due on the mortgage, but did not exceed the amount claimed to be due. In December, 1873, the defendant, as administrator, filed in the probate court an inventory of the property of the estate, made by him under date of August, 1872. This inventory of property consisted only of the note and mortgage before referred to, which was there set down as belonging to the estate, without reference to any adverse claim of the defendant thereto. On the same day he filed his final account as administrator, in which he charged himself, as before stated, with the sum of $2,634, as received from Kelly on the foreclosure, and credited himself with $233.78 as expenses. Thereupon, and at the time fixed for the examination and allowance of the administrator's account, the court made and entered its order or judgment, reciting the receipt by the administrator of the sum of $2,634 on account of the estate, and that he had paid out $283.78, leaving a balance in his hands of $2,350.22, and that the claim of the defendant, amounting to $3,900, was the only claim allowed against the estate. It was then ordered that the final account be allowed, that the sum remaining in the hands of the administrator—$2,350.22—be applied in part-payment of the claim of the defendant, and that the administrator be dis-

charged from his trust. Two days thereafter, at the request of the defendant, Kelly assigned to him the sheriff's certificate of foreclosure sale, and afterwards made a formal deed of conveyance to him of his interest in the premises. The assignment and conveyance were made without consideration, and in furtherance of the intention entertained by the defendant at the time of the foreclosure sale. The plaintiffs have not resided in this state since 1865, and they had no actual notice or knowledge of any of the above-stated proceedings for administration or for the foreclosure, nor of any of the defendant's acts, until within six months prior to the commencement of this action.

Upon this state of the facts the court considered that the defendant held the legal title in trust for the benefit of the plaintiffs, but subject to the defendant's claim for the amount bid at the foreclosure sale, and reported to the probate court as assets, ($2,634,) with interest since the sale, for the payment of which provision was made in the order and judgment of the court.

In the foregoing statement of the case we have referred to an indebtedness of Bond to the defendant. It is contended by the respondent that there was no legal indebtedness, because, as it is said, the agreement as found by the court was not valid under the statute of frauds. Upon this point we will only say that the debt was allowed by the probate court as a just claim against the estate. That adjudication determined that matter. *State* v. *Probate Court of Ramsey Co.,* 25 Minn. 22. If in this action proof of fraud could avail to impeach or qualify the effect of that adjudication, it is enough to say that fraud is not found.

The appellant makes the point that before the commencement of probate proceedings the right of those who might represent Bond's estate to redeem the pledged note and mortgage had become barred by delay and by statutory limitation, and the note and mortgage had become, in effect, the absolute property of the defendant. To this it is a sufficient answer that in the probate and foreclosure proceedings the defendant treated the note and mortgage as the property of the estate, and he is estopped from now saying that they belonged to him and not to the estate. He elected, as he might do, to relinquish

whatever benefit accrued to him by the pledge of the note and mortgage as collateral security. By that election, and by the proceedings taken in the probate court inconsistent with the assertion of a proprietary claim on the part of the defendant, he is concluded.

The most important question in the case is whether, in view of the fiduciary relation of the defendant, as administrator of the estate, he was disqualified from purchasing at the foreclosure sale in his own behalf, even though he bid and paid the full amount of the mortgage debt due to the estate. Should he be deemed to hold the title so acquired in trust for those towards whom he stood in the relation of a trustee, if they should seasonably elect to treat the purchase as made for their benefit? The plaintiffs seek by this action to have such a trust declared and enforced. We shall treat the case as though the purchase had been made, at the second foreclosure sale, by the defendant in his own name, and for his own benefit. The plaintiffs rightly assert that this was the legal effect of the transaction. The intervention of a third person, Kelly, as the merely apparent purchaser, by the procurement of the defendant and in his personal behalf, did not affect the legal result. It is true that it tends to show a purpose to deceive all who might be interested, to cover up and conceal the fact that the purchase was really in behalf of the defendant. But whatever may have been the reason for this, it does not affect the question now under consideration. The rights asserted by the plaintiffs rest upon the fact that the defendant, while acting as administrator in foreclosing the mortgage for the estate, was the real purchaser at that sale in his own behalf. If he might thus lawfully secure to himself and hold the benefits accruing from the purchase, it does not affect the rights of the parties that he pursued a course calculated to conceal that fact.

We shall hereafter refer to this disguising of the defendant's interest in the purchase in its bearing upon the question of the plaintiffs' laches. For the present we assume that the plaintiffs have seasonably exercised their election to treat the purchase by the administrator as having been made for the benefit of the estate, and that the delay in commencing this action is to be attributed to the improper

disguise which the defendant threw over the transaction, rather than to any acquiescence of the plaintiffs in a purchase by the defendant.

There can be no doubt that the defendant, as administrator of the estate, acting as such in foreclosing this mortgage, occupied such a fiduciary relation that the general rule which disables one who occupies such a position from purchasing for his own benefit at a sale made in the discharge of his fiduciary duty would be applicable, unless the peculiar circumstances are such that the reason upon which that rule is based are not applicable, and so, the reason of the law ceasing, the law itself ceases to be applicable. For instance, there would be no doubt, if the defendant had purchased the mortgaged property for his own benefit, for less than the debt which it secured to the estate, the plaintiffs might have successfully claimed that the purchase should be treated as made for the benefit of the estate, and that the defendant held the title in trust. Nor would the result depend at all upon the fact of actual fraud being shown. The court would not try that question. This result would follow from the fact of the fiduciary character of the defendant, and that the circumstances were such that to allow the trustee in the discharge of his duty to gain for himself whatever advantage might result from the purchase might tempt him to act for the promotion of his own interests, and thus subordinate, disregard, and prejudice the interests which as a trustee he is bound to protect and subserve. It would be enough that self-interest *might* conflict with his duty as trustee. The law will not allow the motive for self-gain to stand as a temptation to misconduct in the discharge of duties growing out of a fiduciary relation. The legal principle is well stated in *King* v. *Remington*, 36 Minn. 15, 25, (29 N. W. Rep. 352.) There is no doubt as to the general disability of one occupying such a relation to purchase and to hold for his own benefit, as against the claims of a *cestui que trust*, property sold by him, or under his direction and control, as trustee.

But the defendant contends that this rule is not applicable, in view of the considerations that the property sold was not the property of the estate; that it was only security for the payment of the

debt evidenced by the note; that the estate was only entitled to have the note paid or collected, and the duty of the administrator went no further than to collect or enforce payment, which he did do by himself purchasing the security at a sale which he was legally authorized to make; that this was the utmost which the estate could realize from the foreclosure sale, for, if more had been bid, the surplus would have gone to Brown, the mortgagor, and not to this estate. And it is said that the administrator was not bound to speculate for the estate by bidding in the property for it, so that, if redemption should not be made, it might acquire the title to the mortgaged premises. The argument is plausible, but does not make it apparent that the reason on which the general rule is founded is inapplicable to the case. From these considerations it may be said that the *probability* that the administrator may have disregarded any duty which he owed to the estate, or that his profit has been secured to the prejudice of the rights of the estate, is *less* than it would be under ordinary circumstances. But unless it can be confidently asserted that such a case affords no opportunities or inducements for misconduct or neglect of duty to the estate, in order that the individual interests of the administrator may be promoted, if there *may be* a conflict between duty and self-interest, the rule is applicable. But it cannot safely be said that this case presented no inducement to misconduct, no conflict between duty and self-interest. We cannot, of course, conjecture all the circumstances under which the interests of the estate might be prejudiced if the administrator is to be allowed to purchase for his own benefit, provided only that he pays the full amount of the debt secured. It will suffice to state a supposable case of that kind. This administrator was not restricted to the foreclosure of this mortgage as a means of realizing on this secured debt for the benefit of the estate. He was not obliged to do that, nor should he do it, if a course obviously more advantageous to the estate were open before him. If an opportunity were presented to him to sell the note and mortgage for more than the amount of the note he might do so, and presumably that would be for the interest of the estate. By foreclosure of the mortgage he could only realize the amount of the debt secured, unless by a pur-

chase of the mortgaged property and by non-redemption the land itself might be secured, of a value greater than the amount of the debt; and to sustain the contention of the defendant that he had a right to purchase for his own benefit we must say that his duty as administrator did not require, even if it permitted, him to bid off the property for the estate in order to secure that contingent benefit, a benefit contingent upon a neglect to redeem, as well as upon the value of the property when the time to redeem should expire. Now, suppose some stranger were to come to the administrator and offer to purchase the note and mortgage, and to pay the amount due, and, the administrator refusing to accept that, (having in view a possible benefit to himself by purchasing at a foreclosure sale,) the offer is increased to a sum greatly in excess of the amount of the debt. The administrator knows, as we may suppose, that the mortgaged property is of a value far exceeding the debt secured, and yet he may have reason to suppose that no redemption will be made from a foreclosure sale, and that the purchaser will secure a great advantage in the acquisition of the property. If he is not legally disabled from himself purchasing and securing such a benefit, he is confronted with the temptation to reject the advantageous opportunity to sell the note and mortgage at a premium for the benefit of the estate, in order that he may proceed to foreclose the mortgage, and thus secure a benefit to himself. The result is that the estate realizes through the foreclosure sale simply the amount of the debt, and loses the premium which was offered.

It is not a sufficient answer to such suggestions to say that just such a case as we have supposed is not here shown, and is not very likely to arise, and that it does not appear in this case that there were any peculiar circumstances which would naturally tempt the administrator to subordinate the interests of the estate to his own as a purchaser. To require such conditions to be shown is opposed to the reasons upon which the rule of disability is founded, and would leave unguarded the way to abuses which the rule is designed to prevent. As was said in *King* v. *Remington,* "it is to avoid the necessity of any such inquiry that the rule takes so general a form." It would be very unsafe to confine our attention to the question whether, *if there is to*

*be a foreclosure sale,* the interests of the estate could be prejudiced by allowing the administrator to purchase for his own benefit, and without accountability, provided he pays the full amount which could be realized for the benefit of the estate *from a foreclosure sale.* His fiduciary duty was not restricted to the foreclosure of the mortgage; and if he might better promote the interests of the estate by another course, the opportunity to subserve his own interests by a foreclosure should not be allowed to stand in his way, tempting him to a course of conduct inconsistent with his duty as a trustee. Bearing in mind the reason of the rule, and that it is designed not merely to afford a remedy for actual and discoverable fraud, but to remove the inducement to misconduct which might not be discovered, it cannot be said that the circumstances of this case are such as to render the general principle inapplicable. *Fosbrooke* v. *Balguy,* 1 Mylne & K. 226.

We do not decide whether, if consideration were confined to the foreclosure proceeding, and without regard to the duties of the administrator except such as might relate to the proper conduct of the foreclosure, the fact that he had purchased the mortgaged property for his own benefit, paying the full amount of the mortgage debt, would render him liable to be charged as trustee.

The fact that the foreclosure sale was made by the sheriff does not relieve the defendant from disability. *Leisenring* v. *Black,* 5 Watts, 303. The foreclosure proceeding being presumably for the benefit primarily of the estate, the administrator could control it to a great extent, and up to the time appointed for the sale the sheriff would have nothing to do with it. The administrator could select the time to be fixed for the sale, and the medium for the publication of notice. He could influence greatly, if not control, the action of the sheriff in respect to proceeding with or postponing the sale at the time set therefor.

It is, however, argued that the right of the plaintiffs to have the purchase by the defendant adjudged to be in trust is barred by lapse of time. Upon the facts as established by the findings of the court, its conclusion upon this point should be sustained. It will be borne in mind that the title still remains in the defendant. Rights of

innocent purchasers have not intervened. The land has remained vacant and unoccupied. In order that a right of action be barred by laches there should be knowledge or notice which should prompt to inquiry concerning the facts upon which a right of action rests, or there should be some neglect of duty or of self-interest, to which want of knowledge may be attributable. The plaintiffs had no actual notice of the fact that the purchase, apparently made by Kelly, was in fact for the benefit of the administrator. There was nothing to suggest inquiry as to what Kelly may have done with the property after the purchase and after the discharge of the administrator. Since the fact upon which the plaintiffs' equity rests was concealed and disguised by the improper conduct of the trustee, the plaintiffs' want of knowledge is to be attributed to his misconduct rather than to any neglect on their part. See *Watson* v. *Toone*, 6 Mad. 153.

So, too, by reason of the element of fraud in the case, the statute of limitations is not a bar. The only provisions of the statute to which we refer are subdivisions 6, 7, § 6, c. 66, Gen. St. 1878. The former, embracing actions for relief on the ground of fraud, provides that the cause of action shall not be deemed to have accrued "until the discovery by the aggrieved party of the facts constituting the fraud." The seventh subdivision comprises "actions to enforce a trust or compel an accounting when the trustee has neglected to discharge his trust, or has repudiated the trust relation, or has fully performed the same." It is said that the court has not found that the defendant is chargeable with fraud. The answer to this is that the court found facts from which the presumption of fraud conclusively follows, as respects a *cestui que trust* who seasonably asserts his rights. The court will not even stop to inquire whether there was fraud in fact, but presumes it from the relation of the parties and the circumstances such as are found in this case. We think that in such an action, and under the circumstances of concealment here presented, the statutory limitation of six years does not commence to run until the discovery of the facts constituting the fraud which the law thus presumes. *Cock* v. *Van Etten*, 12 Minn. 431, (522;) *Com'rs of Mower County* v. *Smith*, 22 Minn. 97, 115; *Reitz*

v. *Reitz*, 80 N. Y. 538; *Phalen* v. *Clark*, 19 Conn. 421, and cases cited. If ordinary legal actions for fraud are not barred until the specified time after its discovery, it would be strange if in an equitable action like this, based upon facts which are conclusively presumed to have been fraudulent, it should not be sufficient, in answer to the claim that the six-years statutory limitation bars a right of recovery, to say that the deceitful guise in which the defendant shrouded his conduct has prevented the plaintiffs from acquiring a knowledge of his fraud and of their rights. The seventh subdivision of the statute, read in connection with the sixth, cannot reasonably be construed as limiting the right of action for relief on the ground of fraud to six years from the time of the acts complained of, if the fraud was committed by one acting in a fiduciary capacity, while in all other cases of fraud six years from the time of the discovery of the fraud is allowed.

The court did not err in restricting the defendant's right of reimbursement to the amount for which he had purchased the property, (in Kelly's name,) with interest, and disbursements made in the care and holding of the property. He was not entitled to be paid, in addition to that, the unpaid balance of his debt against Bond as a condition of allowing to the plaintiffs the benefit of his purchase while acting as administrator.

Judgment affirmed.

---

The following opinion was filed August 29, 1891, after a reargument:

DICKINSON, J.    After the decision in this case had been filed, a reargument was allowed, upon the application of the appellant, of the question whether the plaintiffs should be required, as a condition attending the granting of the relief which they invoke, to pay to the defendant only the amount for which the property was sold at the foreclosure sale, with interest, or whether they should be required to pay the whole amount of the original debt owing by the estate of Bond to the defendant. Upon reargument, and reconsideration of

this question, our views have not been changed, and we adhere to the former decision. The considerations which lead to this conclusion may be briefly stated.

The nature of the remedy sought by the plaintiffs, and granted to them in this action, and the grounds upon which it rests, are to be kept in mind in considering whether that remedy should be granted only upon the condition that the defendant be paid the whole debt originally owing to him from the estate of which he was the administrator. The relief sought, and to which whatever conditions are to be imposed may be said to be incident, is that the legal title acquired by the defendant through the exercise of his functions as administrator of the estate be vested in the plaintiffs as the heirs of the intestate. The liability of the defendant to be treated as holding the title thus acquired in trust for the plaintiffs rests upon the general principle, dictated by reasons of policy, that the law will not place it in the power and discretion of one standing in a fiduciary relation to exercise his functions as a trustee with a view to his own advantage rather than that of his *cestui que trust.* As against the latter, he is not permitted to hold for himself the benefits arising from the exercise of his fiduciary duties. In a case like that under consideration, the heirs of the intestate may elect to have the administrator, who purchased the mortgaged premises at the administrator's foreclosure sale, declared to hold the title thus acquired in trust for their benefit. But the granting of such relief does not rest upon the theory that the sale was not effectual. It does not annul the sale or reinstate the conditions existing before the sale was made. The sale is still deemed to have been effectual, and the title passed from the mortgagor to the purchaser, although he held it subject to the liability to be charged as a trustee for the plaintiffs. Though he be so charged, and the purchase made to inure to the benefit of the heirs of the intestate, the land does not thereby become the property of the estate of the intestate. It is not subject to readministration, or liable to be charged with the unpaid debts of that estate. A good reason is assignable on equitable grounds, if this title is to inure to the plaintiffs, why they should be required to reimburse the defendant the sum for which the sale was made. The reason, however, is

not that the estate owed the debt, but that this was the price which the defendant, in effect, paid for this property. In effect, he purchased the land with a specific amount of his claim as allowed against the estate. To that extent, but only to that extent, he received payment on account of the debt, taking to himself in consideration thereof the benefits which might result from the sale; and, while he necessarily held the title thus acquired subject to the liability of being charged as a trustee, yet it would be inequitable that the plaintiffs should be allowed to avail themselves of the benefit of his purchase without repaying to him the consideration which he had given. But this principle goes no further. It is not applicable to charge the property so purchased with liability for the *remainder* of the debt originally due to him from the estate, and which remained wholly unaffected by the sale or purchase of this property. The whole conclusion may be summed up in the statement that there is no connection or relation between the right of the plaintiffs to the remedy sought, resting, as it does, upon the principle of policy above stated, and the right of the defendant to be paid from the assets of the intestate estate the whole of his debt against the estate. The reasons which entitle them to the relief sought are wholly inapplicable to charge them, or the property in controversy, with the payment of the debt which the estate owed to the defendant.

The former decision will remain unchanged.

MITCHELL, J. I dissent. If defendant is to be held trustee of the title for the plaintiffs, it ought only to be on condition that they pay him the entire claim for which he held the note and mortgage as collateral. This seems to me to be but common justice, and I fail to see any legal or equitable principle to prevent. With all due deference to my brethren, it seems to me that the course of reasoning by which a different result is arrived at is rather narrow and technical. Had defendant been guilty of any actual fraud, the case might have been different; but the facts of the case conclusively negative any such thing. Evidently the defendant honestly, but mistakenly, adopted the course he did as the most convenient method of realizing upon a security of which he had no formal written assignment, and

I do not think that plaintiffs ought to have the benefit of the title which grew out of the foreclosure of this mortgage, without paying the whole debt for which their intestate pledged it.

COLLINS, J.    I concur in the views expressed by Mr. Justice Mitchell.